IN THE MATTER OF:

Sean M. Sutton

                       **Debtor**

Case No. 14-47443
Judge Walter Shapero
Chapter 13

_____/

Sean M. Sutton

                    **Debtor/Plaintiff**

Adversary Case No. _____

vs.

Deutsche Bank National Trust Company, as
indenture Trustee, on behalf of the holders of the
Terwin Mortgage Trust 2007-1SL, asset-backed
securities, Series 2007-1SL, c/o Specialized Loan
Servicing LLC, its successors and assigns

                    **Creditor/Defendant**

_____/

John A. Steinberger (P30812)
John A. Steinberger & Associates PC
Attorney for Plaintiff(s)
17515 W. Nine Mile Rd., Ste 420
Southfield, MI 48075
(248) 559-4055

_____/

## COMPLAINT TO DETERMINE THE EXTENT OF THE LIEN OF DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE, ON BEHALF OF THE HOLDERS OF THE TERWIN MORTGAGE TRUST 2007-1SL, ASSET-BACKED SECURITIES, SERIES 2007-1SL, C/O SPECIALIZED LOAN SERVICING LLC, ITS SUCCESSORS AND ASSIGNS

      NOW COMES Debtor/Plaintiff, **Sean M. Sutton**, by and through attorney **JOHN A. STEINBERGER & ASSOCIATES P.C.**, and complains to this Honorable Court against **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE, ON BEHALF OF THE HOLDERS OF THE TERWIN MORTGAGE TRUST 2007-1SL, ASSET-BACKED SECURITIES, SERIES 2007-1SL, C/O SPECIALIZED LOAN SERVICING LLC, ITS SUCCESSORS AND ASSIGNS**, Creditor/Defendant, as follows:

1.   Jurisdiction of this matter is conferred on this Court through 28 USC 1334(b).

2.   This is a core proceeding pursuant to 28 USC 157(b)(2)(K).

3.   Venue is proper pursuant to 28 USC 1409(a).

4.   That the Debtor has a Chapter 13 proceeding open with this court.

5. That Debtors Plan filed in the Chapter 13, proposes to strip the lien of **Deutsche Bank National Trust Company, as indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2007-1SL, asset-backed securities, Series 2007-1SL, c/o Specialized Loan Servicing LLC, its successors and assigns'** second mortgage from the subject property commonly known as 7811 Green Farm Dr., Ypsilanti, MI, treating its claim as wholly unsecured.

6. Quicken Loans Inc., serviced by Ocwen Loan Servicing LLC has a first lien on the subject property represented by a mortgage dated July 21, 2006, and recorded on July 31, 2006, at Liber 4572, Page 848. (See attached EXHIBIT A – Recorded First Mortgage)

7. The total value of the first lien of Quicken Loans Inc., serviced by Ocwen Loan Servicing LLC, is approximately $164,409.97. (See attached EXHIBIT B – Ocwen Loan Servicing LLC Mortgage Account Statement)

8. **Deutsche Bank National Trust Company, as indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2007-1SL, asset-backed securities, Series 2007-1SL, c/o Specialized Loan Servicing LLC, its successors and assigns** has a second lien on the property represented by a mortgage dated July 21, 2006 and recorded in the Washtenaw Register of Deeds on July 31, 2006 at Liber 4572, Page 849. (See EXHIBIT C – Proof of Claim of Deutsche Bank National Trust Company, as indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2007-1SL, asset-backed securities, Series 2007-1SL, c/o Specialized Loan Servicing LLC and Assignment of Mortgage).

9. Pursuant to an Appraisal conducted June 10, 2014, the market value of the subject property is $150,000.00, which amount is less than the secured claim of Quicken Loans Inc., serviced by Ocwen Loan Servicing LLC, Debtor's first mortgage creditor. (See Appraisal Report attached hereto as EXHIBIT D.)

10. 11 USC 506(a) allows a creditor to have a secured claim to the extent of the value of its interest in the estate's interest in the property, and an unsecured claim to the extent that its interest is less than the amount of its allowed secured claim.

11. The interest of the second mortgage of **Deutsche Bank National Trust Company, as indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2007-1SL, asset-backed securities, Series 2007-1SL, c/o Specialized Loan Servicing LLC, its successors and assigns** exceeds the value of the subject property.

12. There is no remaining interest in the estate's interest in the property to which the lien of the second mortgage of **Deutsche Bank National Trust Company, as indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2007-1SL, asset-backed securities, Series 2007-1SL, c/o Specialized Loan Servicing LLC, its successors and assigns** can attach and therefore it is wholly unsecured.


**WHEREFORE,** Plaintiff prays that this Court enter an Order determining that the lien of **Deutsche Bank National Trust Company, as indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust**

2007-1SL, asset-backed securities, Series 2007-1SL, c/o Specialized Loan Servicing LLC, its successors and assigns shall be stripped from the following property located in Washtenaw County, Michigan, described as:

> Lot 49 Greene Farms Subdivision No. 1, 31, as recorded in Liber 31, Page 71 through 76 of Plats. Parcel ID K 1133406049

commonly known as 7811 Greene Farm Dr., Ypsilanti, MI.

FURTHER, Plaintiff prays that the claim of **Deutsche Bank National Trust Company, as indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2007-1SL, asset-backed securities, Series 2007-1SL, c/o Specialized Loan Servicing LLC, its successors and assigns** will be treated as a Class 9 unsecured claim.

Dated: 7/3/2014

Respectfully submitted:

/s/
**John A. Steinberger (P30812)**
John A. Steinberger & Associates P.C
Attorney for Plaintiff(s)
17515 W. 9 Mile Road, Suite 420
Southfield, MI 48075
(248) 559-4055
john@steinbergerlaw.com

# EXHIBIT LIST

**EXHIBIT A**  Recorded First Mortgage

**EXHIBIT B**  Ocwen Loan Servicing LLC Mortgage Account Statement

**EXHIBIT C**  Proof of Claim of Deutsche Bank National Trust Company, as indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2007-1SL, asset-backed securities, Series 2007-1SL, c/o Specialized Loan Servicing LLC and Assignment of Mortgage

**EXHIBIT D**  Appraisal Report



OFFICIAL SEAL
L-4572  P-848
07/31/06
Washtenaw Co., MI
Lawrence Kestenbaum
Clerk Register



Page: 1 of 16
ACS-5739298-M-2006-16
Lawrence Kestenbaum, Washtenaw
02:47 P
07/31/06
L-4572  P-848

# MORTGAGE

7278063407P

2248144

Return To:
Sharyn Labby
Quicken Loans Inc.
20555 Victor Parkway
Livonia, MI  48152

Return to:

Title Source Inc.
1450 W Long Lake Rd.
Suite 400
Troy, MI 48098

R# 2268246
MIN 100039072780634079

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated     July 21, 2006
together with all Riders to this document.
**(B) "Borrower"** is Sean Sutton, an unmarried man, as his Sole and Separate
Property

Borrower's address is 7811 Greene Farm Dr., Ypsilanti, MI  48197
. Borrower is the mortgagor under this Security Instrument.

MICHIGAN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS         Form 3023 1/01

VMP®-6A(MI) (0005)        1054653177        2244603
Page 1 of 15        Initials:

VMP MORTGAGE FORMS - (800)521-7291

q07278063407 0233 171 0115



Page: 2 of 16
ACS-5739298-M-2006-16
Laurence Kestenbaum, Washtenaw
02:47 P
07/31/06
L- 4572  P- 848

7278063407P

**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888)679-MERS.

**(D)** **"Lender"** is Quicken Loans Inc.

Lender is a Corporation
organized and existing under the laws of                    the State of Michigan
Lender's address is 20555 Victor Parkway, Livonia, MI 48152

**(E)** **"Note"** means the promissory note signed by Borrower and dated          July 21, 2006
The Note states that Borrower owes Lender One Hundred Fifty Nine Thousand Six
Hundred and 00/100                                                                Dollars
(U.S. $ 159,600.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than          August 1, 2036          .

**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider          ☒ Other(s) [specify]
                                                              Legal Attached

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.



-6A(MI) (0005)                        Page 2 of 15        Initials:                Form 3023 1/01

q07278063407 0233 171 0215

ACS-S739298-M-2006-16
02:47 P
07/31/06
Laurence Kestenbaum, Washtenaw
L- 4572  P- 848

7278063407P

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

County       of       Washtenaw       :
[Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

Parcel ID Number:       K01133406049       which currently has the address of
7811 Greene Farm Dr.                                                    [Street]
          Ypsilanti                    [City] , Michigan 48197       [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials: _____


-6A(MI) (0005)                    Page 3 of 15                    Form 3023 1/01


q07278063407  0233  171  0315

Page: 16 of 16
02:47 P
07/31/06
ACS-5739298-M-2006-16
Lawrence Kestenbaum, Washtenaw
L-4572 P-848

# Exhibit A - LEGAL DESCRIPTION

| Deal Number: | 11-00988181 | Title Number: | 11-02244602 REV. NO. |
|---|---|---|---|

Tax ID Number: **K-11-33-406-049**

Land situated in the **Township** of **Ypsilanti**, in the County of **Washtenaw**, State of **Michigan** is described as follows:

Lot 49 GREENE FARMS SUBDIVISION NO. 1, 31, as recorded in Liber 31, Page 71 through 76 of Plats.

Commonly known as: 7811 Greene Farm, Ypsilanti, MI 48197

**SUBMITTED
FOR RECORDING**

**JUL 3 1 2006**

Washtenaw County, MI
Clerk Register's Office

This Commitment is valid and binding for a period of 180 days from the date hereof. Thereafter it is void and of no effect.

ALTA COMMITMENT - Schedule B-II

*FIDELITY NATIONAL TITLE
INSURANCE COMPANY*

# Mortgage Account Statement



**CUSTOMER INFORMATION**

Name:       Sean Sutton

Account Number:    7195176453

Home Phone #:     ( ) - 0

**PROPERTY ADDRESS**

7811 GREENE FARM DR
YPSILANTI    MI 48197

OCWEN

Visit us at ocwen.mortgagebanksite.com
for account information.

02/11/10 11:00 3   0003284 20131020 MJ195802 OCREG   1 OZ.DOM MJ10580060* 146316   GM



SEAN SUTTON
7811 GREENE FARM DR
YPSILANTI MI 48197-9465

Please verify your mailing address, borrower and co-borrower information. Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | ●●●●●●6453 |
| Statement Date | October 18, 2013 |
| Maturity Date | August 01, 2036 |
| Interest Rate | 2.87500 |
| Interest Paid Year-to-Date | $0.00 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $2,046.29- |
| Principal Balance(PB)* | $164,409.97 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $812.80 |
| Subsidy/Buydown | $0.00 |
| Escrow | $345.42 |
| Amount Past Due | $3,474.66 |
| Outstanding Late Charges | $81.28 |
| Other | $1,139.97- |
| Total Amount Due | $3,574.19 |
| Account Due Date | August 01, 2013 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call:      1-800-256-9962**
**For Payment Arrangements call: 1-800-850-4622**

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| PROP INSPECTION FEE | 07/01/13 | 09/27/13 | $18.25 | | | | | | $18.25 |

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).

See back for automatic payment sign-up information and other payment options.

## Important News

!Attention Military Families! We are committed to doing what we can to support our customers in the military. If you or a member of your family are in the military and are experiencing a financial hardship, please contact us at 866-961-1412 or email us at Military.Families@mortgagebanksite.com to discuss your situation and identify possible alternatives.

**See Reverse Side And Additional Pages For Important Information And State Specific Disclosures**

**Mail Thi** 

**EXHIBIT B**

If Received

| UNITED STATES BANKRUPTCY COURT | FOR THE EASTERN DISTRICT OF MICHIGAN DETROIT DIVISION | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>Sean M. Sutton | Case Number:<br>14-47443-WS | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Deutsche Bank National Trust Company, as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2007-1SL, Asset-Backed Securities, Series 2007-1SL

**COURT USE ONLY**

Name and address where notices should be sent:
Specialized Loan Servicing LLC
8742 Lucent Blvd, Suite 300
Highlands Ranch, Colorado 80129

Telephone number: (800) 315-4757     email:

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____

*(If Known)*

Filed on _____

Name and address where payment should be sent: (if different from above):
Specialized Loan Servicing LLC
PO Box 636007
Littleton, Colorado 80163

Telephone number: (800) 315-4757     email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**     $29,559.03

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**     Money Loaned
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>xxxxxx6747 | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate ☐ Motor Vehicle ☐ Other
Describe:     7811 Greene Farm Dr, Ypsilanti, Michigan  48197

**Value of Property:** _____

**Annual Interest Rate:** 4.0000%   ☒ Fixed  or  ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$966.24

**Basis for perfection:**     Recordation of Lien

**Amount of Secured Claim:**     $29,559.03

**Amount Unsecured:** _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a) (1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(5).

**Amount entitled to priority:**

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family or household use - 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507(a) (__).

*\*Amounts are subject to adjustment on 04/01/2016 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

---

**EXHIBIT C**

B10Form_Ver001 : 4122-N-0467

## Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.** See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| Name of debtor: | Sean M. Sutton | Case number: | 14-47443-WS |
| Name of creditor: | Deutsche Bank National Trust Company, as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2007-1SL, Asset-Backed Securities, Series 2007-1SL | **Last four digits** of any number you use to identify the debtor's account: | xxxxxx6747 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date (04/29/2014)

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in item 1 on your Proof of Claim form).

1. **Principal due**                                                                    (1)    $28,895.69

2. **Interest due**

| Interest rate | From | To | Amount |
|---|---|---|---|
| 4.000% | 10/01/2013 | 04/29/2014 | $663.34 |

   Total interest due as of the petition date $663.34          Copy total here  **>**  (2)   + $663.34

3. **Total principal and interest due**                                                  (3)    $29,559.03

## Part 2: Statement of Pre-Petition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates Incurred | Amount |
|---|---|---|
| 1. Late Charges | | (1) |
| 2. Non-sufficient funds (NSF) fees | | (2) |
| 3. Attorney fees | | (3) |
| 4. Filing fees and court costs | | (4) |
| 5. Advertisement costs | | (5) |
| 6. Sheriff/auctioneer fees | | (6) |
| 7. Title costs | | (7) |
| 8. Recording fees | | (8) |
| 9. Appraisal/broker's price opinion fees | | (9) |
| 10. Property inspection fees | | (10) |
| 11. Tax advances (non-escrow) | | (11) |
| 12. Insurance advances (non-escrow) | | (12) |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) |
| 14. Property preservation expenses. Specify: | | (14) |
| 15. Other. Specify: | | (15) |
| 16. Other. Specify: | | (16) |
| 17. Other. Specify: | | (17) |
| 18. **Total prepetition fees, expenses, and charges.** Add all of the amounts listed above. | | (18)    $0.00 |

EXAForm_Ver001
4122-N-0467

1

Case 14-47443-wsd    Claim 5    Filed 06/26/14    Page 3 of 4
14-04665-wsd    Doc 1    Filed 07/03/14    Entered 07/03/14 15:44:20    Page 11 of 37

## Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☒ No

☐ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the **petition** date in a form consistent with applicable nonbankruptcy law.

| | | | | |
|---|---|---|---|---|
| 1. | **Installment payments due** | Date last payment received by creditor | 09/25/2013 | |
| | | Number of installment payments due: | (1) <u>6</u> | |
| 2. | **Amount of installment payments due** | | | |

November 2013 to April 2014     6 installments @ $161.04 =     $966.24

| | | | | |
|---|---|---|---|---|
| | **Total installment payments due as of the prepetition date** | <u>$966.24</u> | Copy total here   >   (2) | <u>$966.24</u> |
| 3. **Calculation of cure amount** | <u>Add</u> total prepetition fees, expenses, and charges | | Copy total here from Part 2   **>** | + <u>$0.00</u> |
| | <u>Subtract</u> total of unapplied funds (funds received but not credited to account) | | | <u>$0.00</u> |
| | <u>Subtract</u> amounts for which debtor is entitled to a refund | | | _____ |
| | **Total amount necessary to cure default as of the petition date** | | (3) | <u>**$966.24**</u> |

Copy total onto Item 4 of Proof of Claim form

Your monthly payment amount may change due to an escrow requirement and/or interest rate adjustment.
Your current payment amount and any upcoming changes are provided below.

| Effective Date | Effective Amount |
|---|---|
| 05/01/2014 | $161.04 |

**Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.**

EXAForm_Ver001
4122-N-0467

2

Case 14-47443-wsd    Claim 5    Filed 06/26/14    Page 4 of 4
14-04665-wsd    Doc 1    Filed 07/03/14    Entered 07/03/14 15:44:20    Page 12 of 37



Prepared by & Return to:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092

### Assignment of Mortgage
Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")
AS NOMINEE FOR QUICKEN LOANS INC. ITS SUCCESSORS AND ASSIGNS P.O. Box 2026, Flint MI 48501-2026, 1901
E. Voorhees Street, Suite C, Danville, IL 61834 (Assignor)** by these presents does assign and set over, without recourse, to
**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE, ON BEHALF OF THE HOLDERS OF
THE TERWIN MORTGAGE TRUST 2007-1SL, ASSET-BACKED SECURITIES, SERIES 2007-1SL c/o Specialized Loan
Servicing LLC, 8742 Lucent Blvd., Suite 300, Highlands Ranch, CO 80129 (Assignee)** the described mortgage with all interest,
all liens, any rights due or to become due thereon, executed by **SEAN SUTTON, AN UNMARRIED MAN, AS HIS SOLE AND
SEPARATE PROPERTY** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') AS NOMINEE FOR
QUICKEN LOANS INC. ITS SUCCESSORS AND ASSIGNS.    Said mortgage **Dated: 7/21/2006** is recorded in the State of MI,
County of Washtenaw on 7/31/2006, Book 4572 Page 849 AMOUNT: $ 39,900.00    Property Address: 7811 GREENE FARM
DR., YPSILANTI, MI 48197
IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its
proper officer. Executed on: May 20, 2014
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR QUICKEN LOANS INC. ITS
SUCCESSORS AND ASSIGNS

By: _____



Michael Wileman, Assistant Secretary

State of Texas, County of Tarrant
    On 05/20/2014, before me, the undersigned, Michael Wileman, who acknowledged that he/she is Assistant Secretary of/for
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR QUICKEN LOANS INC. ITS
SUCCESSORS AND ASSIGNS and that he/she executed the foregoing instrument and that such execution was done as the free act
and deed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR QUICKEN LOANS
INC. ITS SUCCESSORS AND ASSIGNS.

_____

Notary public, C. Lafferty
My commission expires: November 30, 2014



C. LAFFERTY
MY COMMISSION EXPIRES
November 30, 2014

OFFICIAL SEAL    Washtenaw Co., MI
07/31/06   Lawrence Kestenbaum
L-4572   P-849    Clerk Register

Page: 1 of 5
02:47 P
07/31/06..
ACS-5739299-M-2008-S
Lawrence Kestenbaum, Washtenaw     L-4572   P-849



## MORTGAGE

R# 2268248   7293267146p

22604006

Record and Return To:
Sharyn Labby
Quicken Loans Inc.
20555 Victor Parkway
Livonia, MI 48152

MIN 100039072932671466

THIS MORTGAGE is made this   21st   day of   July  ,   2006  , between the Mortgagor, Sean Sutton, an unmarried man, as his Sole and Separate Property

, whose address is

7811 Greene Farm Dr., Ypsilanti, MI 48197    (herein "Borrower"), and the Mortgagee, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Quicken Loans Inc.

("Lender") is organized and existing under the laws of    the State of Michigan and has an address of 20555 Victor Parkway, Livonia, MI   48152

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $39,900.00 which indebtedness is evidenced by Borrower's note dated    July 21, 2006    and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on    August 1, 2021   ;
TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of    Washtenaw
State of Michigan:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

Record and return to:
Title Source Inc.
1450 W Long Lake Rd.
Suite 400
Troy, MI 48098

---

**MICHIGAN** - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

Initials: 

1054654756      Page 1 of 4      Form 3823
VMP -76N(MI) (0102)    VMP MORTGAGE FORMS - (800)621-7281    Amended 2/01

22604 . 224608

q07293267146 0233 161 0104

Page: 2 of 5
02:47 P
07/31/08
ACS-5730298-M-2008-5
Laurence Kestenbaum, Washtenaw
L-4572  P-849



7293267146p

which has the address of       7811 Greene Farm Dr.      ,      Ypsilanti      ,
                                           [Street]                              [City]

Michigan       48197                        (herein "Property Address");
              [ZIP Code]

   TOGETHER with all the improvements now or hereafter erected on the property, and all easements,
rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered
by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this
Mortgage is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees
that MERS holds only legal title to the interests granted by Borrower in this Mortgage; but, if necessary to
comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the
right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the
Property; and to take any action required of Lender including, but not limited to, releasing or canceling this
Mortgage.

   Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of
record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against
all claims and demands, subject to encumbrances of record.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   **1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest
indebtedness evidenced by the Note and late charges as provided in the Note.

   **2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower
shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until
the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments
(including condominium and planned unit development assessments, if any) which may attain priority over
this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for
hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as
reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and
reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the
extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is
an institutional lender.

   If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of
which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an
institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground
rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and
compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law
permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of
this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or
applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or
earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds
showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The
Funds are pledged as additional security for the sums secured by this Mortgage.

   If the amount of the Funds held by Lender, together with the future monthly installments of Funds
payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the
amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such
excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly
installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes,
assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount
necessary to make up the deficiency in one or more payments as Lender may require.

   Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower
any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise
acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its
acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured
by this Mortgage.

   **3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender
under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable
to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the
principal of the Note.

   **4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's
obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over
this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to
be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may
attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

   **5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the
Property insured against loss by fire, hazards included within the term "extended coverage," and such other
hazards as Lender may require and in such amounts and for such periods as Lender may require.

   The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by
Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals
thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in
a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to
the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this
Mortgage.

   In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may
make proof of loss if not made promptly by Borrower.

   If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from
the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance
benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to
restoration or repair of the Property or to the sums secured by this Mortgage.

   **6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit
Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit
impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage

 -76N(MI) (0102)                Page 2 of 4              Initials         Form 3823




Page: 4 of 5
82:47 P
07/31/06
ACS-5739299-M-2006-5
Lawrence Kestenbaum, Washtenaw
L-4572 P-849

7293267146p

the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale hereby granted and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale to Borrower in the manner provided in paragraph 12 hereof. Lender shall publish and post the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession. [Omitted]**

**20. Release.** Upon payment of all sums secured by this Mortgage, Lender shall prepare and file a discharge of this Mortgage without charge to Borrower, and shall pay the fee for recording the discharge.

**REQUEST FOR NOTICE OF DEFAULT
——AND FORECLOSURE UNDER SUPERIOR——
MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Witnesses:

_____    _____ 07/21/2006 (Seal)
                            Sean Sutton                    -Borrower

_____    _____        (Seal)
                                                           -Borrower

                           _____        (Seal)
                                                           -Borrower

                           _____        (Seal)
                                                           -Borrower

*(Sign Original Only)*

**STATE OF MICHIGAN,**     Washtenaw     **County ss:**

The foregoing instrument was acknowledged before me this July 21, 2006
by Sean Sutton, an unmarried man, as his Sole and Separate Property

My Commission Expires:     Jill M. Angst
                           Notary Public, Livingston Co., MI
                           My Comm. Expires March 19, 2008
                                                              Notary Public.
                                         ACTING IN LIVINGSTON COUNTY
                                                 Washtenaw

This instrument was prepared by                           Jill M. Angst
Sharon Laboby                                    Livingston County, Michigan
                           by Quicken Loans, Inc.
20555 Victor Parkway
Livonia, MI 48152

-76N(MI) (0102)         Page 4 of 4                    Form 3823

Page: S of S
02142 P
07/31/26
ACS-5730299-M-2006-5
Lawrence Kestenbaum, Washtenaw
L- 4572  P- 849

## Exhibit A - LEGAL DESCRIPTION

| Deal Number: | 11-00988181 | Title Number: | 11-02244602 REV. NO. |
| --- | --- | --- | --- |

Tax ID Number: K-11-33-406-049

Land situated in the Township of Ypsilanti, in the County of Washtenaw, State of Michigan is described as follows:

Lot 49 GREENE FARMS SUBDIVISION NO. 1, 31, as recorded in Liber 31, Page 71 through 76 of Plats.

Commonly known as: 7811 Greene Farm, Ypsilanti, MI 48197

SUBMITTED
FOR RECORDING

JUL 3 1 2006
Washtenaw County, MI
Clerk Register's Office

---

This Commitment is valid and binding for a period of 180 days from the date hereof. Thereafter it is void and of no effect.

ALTA COMMITMENT - Schedule B-II

*FIDELITY NATIONAL TITLE INSURANCE COMPANY*



**R E A L   E S T A T E**
WWW.ALLIEDAPPRAISERS.COM
4018 MILLER ROAD • FLINT, MICHIGAN 48507
PHONE: (810) 767-1444 • FAX: (810) 767-3866

# INVOICE

| INVOICE NUMBER | |
| --- | --- |
| 10495EM14 | |
| DATE | |
| | |

| REFERENCE | |
| --- | --- |
| Internal Order #: | 10495EM14 |
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | 10495EM14 |
| Other File # on form: | |
| Federal Tax ID: | 38-1896408 |
| Employer ID: | 1201000920 |

TO:

SEAN SUTTON
7811 GREENE FARM DR.
YPSILANTI, MI 48197

| Telephone Number: | Fax Number: |
| --- | --- |
| Alternate Number: | E-Mail: MEANMUTTON@GMAIL.COM |

THIS INVOICE IS FOR APPRAISAL SERVICES PROVIDED TO THE ABOVE REFERENCED CLIENT, PER REQUEST.
PAYMENT IS DUE NET 60. INVOICES OVER 60 DAYS WILL ACCRUE A LATE FEE OF $50.00 PER MONTH PAST 60 DAYS.
INVOICES SENT TO COLLECTIONS WILL BE SUBJECT TO COSTS OF COLLECTION, LITIGATION AND ATTORNEY FEES.

## DESCRIPTION

| | | | |
| --- | --- | --- | --- |
| Lender: SEAN SUTTON | | Client: SEAN SUTTON | |
| Purchaser/Borrower: N/A | | | |
| Property Address: 7811 GREENE FARM DR | | | |
| City: YPSILANTI | | | |
| County: WASHTENAW | | State: MI | Zip: 48197 |
| Legal Description: LOT #49 OF GREENE FARMS SUBDIVISION #1 | | | |

| FEES | AMOUNT |
| --- | --- |
| 1004/URAR REPORT (SECONDARY COUNTY) | 375.00 |
| | |
| SUBTOTAL | 375.00 |

| PAYMENTS | | | AMOUNT |
| --- | --- | --- | --- |
| Check #: CASH | Date: 06/10/2014 | Description: CASH PAYMENT | 375.00 |
| Check #: | Date: | Description: | |
| Check #: | Date: | Description: | |
| | | SUBTOTAL | 375.00 |
| | | TOTAL DUE $ | 0 |

**EXHIBIT D**

# RESIDENTIAL APPRAISAL REPORT



### WWW.ALLIEDAPPRAISERS.COM

4018 MILLER ROAD
FLINT, MICHIGAN 48507

PHONE: (810) 767-1444 • FAX: (810) 767-3866

| | |
|---|---|
| **Property Location:** | 7811 GREENE FARM DR<br>LOT #49 OF GREENE FARMS SUBDIVISION #1<br>YPSILANTI, MI 48197 |
| **Borrower:** | N/A |
| **Client:** | SEAN SUTTON<br>7811 GREENE FARM DR.<br>YPSILANTI, MI 48197 |
| **Effective Date:** | 06/10/2014 |
| **Prepared By:** | ERIC DEAN MORSE, RAA<br>MICHIGAN LICENSE #1201000920<br>ERIC@ALLIEDAPPRAISERS.COM |

**Allied Appraisers**

4018 MILLER ROAD

FLINT, MI 48507

OFFICE (810) 767-1444 / FAX (810) 767-3866

Form GA7 — "WinTOTAL" appraisal software by a la mode, Inc. — 1-800-ALAMODE
Allied Real Estate Appraisers, Inc. (810) 767-1444

14-04665-wsd    Doc 1    Filed 07/03/14    Entered 07/03/14 15:44:20    Page 19 of 37

**Appraisal Report**

# Uniform Residential Appraisal Report

File # 10495EM14

| The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property. |
|---|

| Property Address 7811 GREENE FARM DR | City YPSILANTI | State MI | Zip Code 48197 |
|---|---|---|---|

| Borrower N/A | Owner of Public Record SEAN SUTTON | County WASHTENAW |
|---|---|---|

Legal Description LOT #49 OF GREENE FARMS SUBDIVISION #1

| Assessor's Parcel # K01133406049 | Tax Year 2013 | R.E. Taxes $ 3,165 |
|---|---|---|

| Neighborhood Name GREENE FARMS SUBDIVISION | Map Reference 11460 | Census Tract 26161-4134.02 |
|---|---|---|

| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ NONE | ☐ PUD | HOA $ NONE ☐ per year ☐ per month |
|---|---|---|---|

| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) |
|---|

| Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) BANKRUPTCY |
|---|

Lender/Client SEAN SUTTON    Address 7811 GREENE FARM DR., YPSILANTI, MI 48197

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). DATA RESEARCH CONSIDERED ALL LOCAL MLS SYSTEM RECORDS AVAILABLE, CITY/TOWNSHIP AND COUNTY RECORDS IF APPLICABLE AND/OR CURRENT OWNER/OCCUPANTS OF THE PROPERTY.

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. N/A

| Contract Price $ 0 | Date of Contract N/A | Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s) |
|---|---|---|

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.    0

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban ☒ Suburban ☐ Rural | | Property Values | ☐ Increasing ☒ Stable ☐ Declining | | PRICE | AGE | One-Unit | 90 % |
| Built-Up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply | ☐ Shortage ☒ In Balance ☐ Over Supply | | $ (000) | (yrs) | 2-4 Unit | % |
| Growth | ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time | ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | 100 Low | 5 | Multi-Family | % |
| Neighborhood Boundaries | NORTH BY MERRITT ROAD, EAST BY WHITTAKER ROAD, SOUTH BY | | | | | 350 High | 50 | Commercial | 5 % |
| BEMIS ROAD AND TO THE WEST BY HITCHINGHAM ROAD. OTHER LAND=VACANT. | | | | | | 185 Pred. | 15 | Other | 5 % |

Neighborhood Description ACCESS TO COMMON AMENITIES INCLUDING SCHOOLS, SHOPPING, EMPLOYMENT AND RECREATIONAL FACILITIES ARE ADEQUATE FOR THIS AREA. PROPERTIES WITHIN THIS IMMEDIATE MARKET ARE CONSIDERED COMPATIBLE, HAVE TYPICAL UPKEEP AND EXPRESS NORMAL CHARACTERISTICS OF OTHER COMPETING NEIGHBORHOODS IN THIS AREA.

Market Conditions (including support for the above conclusions) GENERAL MARKET CONDITIONS ARE CONSIDERED TO BE STABLE AT THIS TIME. CURRENT INTEREST RATES ARE STILL RELATIVELY LOW AND FINANCING IS READILY AVAILABLE TO THE TYPICAL BUYER.

| Dimensions 60 X 130 | Area 7,800 SQ.FT. | Shape RECTANGULAR | View RESIDENTIAL |
|---|---|---|---|

| Specific Zoning Classification PD | Zoning Description PLANNED DEVELOPMENT |
|---|---|

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street ASPHALT | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley NONE | | |

| FEMA Special Flood Hazard Area ☐ Yes ☒ No | FEMA Flood Zone X | FEMA Map # 26161C0440E | FEMA Map Date 04/03/2012 |
|---|---|---|---|

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe ANY EASEMENTS OF RECORD RUNNING ONTO THE SITE ARE TYPICAL UTILITY OR DRAINAGE ONLY. NO ENCROACHMENTS WERE EVIDENT FROM LEGAL DESCRIPTION OR NORMAL INSPECTION OF PROPERTY. NO ADVERSE ENVIRONMENTAL CONDITIONS THAT WOULD AFFECTIVELY LOWER THE VALUE OF THE PROPERTY WERE VISIBLY NOTICEABLE ON THE DATE OF INSPECTION.

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☒ Crawl Space | | Foundation Walls | POUR-CONC/AVG. | Floors | CRP-LMNT/FAIR-P |
| # of Stories 2 | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | BRICK-VINYL/GOOD | Walls | DRY WALL/AVG-F |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 705 sq.ft. | Roof Surface | COMPOSITE/GOOD | Trim/Finish | WOOD/AVG. |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish % | Gutters & Downspouts | ALUMINUM/GOOD | Bath Floor | CERAMIC/AVG. |
| Design (Style) COLONIAL | | ☐ Outside Entry/Exit ☒ Sump Pump | | Window Type | VINYL/GOOD | Bath Wainscot | FIBERGLASS/AV-F |
| Year Built 2001 | | Evidence of ☐ Infestation | | Storm Sash/Insulated | NONE/YES/GOOD | Car Storage | ☐ None |
| Effective Age (Yrs) 13 | | ☒ Dampness ☐ Settlement | | Screens | YES/GOOD | ☒ Driveway # of Cars 2 |
| Attic | ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities | ☐ Woodstove(s) # | Driveway Surface CONCRETE |
| ☐ Drop Stair ☐ Stairs | | ☐ Other | Fuel GAS | ☒ Fireplace(s) # 1 | ☒ Fence PARTIAL | ☒ Garage # of Cars 2 |
| ☐ Floor ☒ Scuttle | | Cooling ☒ Central Air Conditioning | | ☐ Patio/Deck | ☒ Porch COVERED | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | | ☐ Individual | ☐ Other | ☐ Pool | ☐ Other | ☒ Att. ☐ Det. ☐ Built-in |

Appliances ☐ Refrigerator ☐ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☒ Other (describe) ATTACHED FIXTURES ONLY

Finished area above grade contains: 6 Rooms 3 Bedrooms 2.1 Bath(s) 1,740 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). COVERED FRONT PORCH AND FIREPLACE IN FAMILY ROOM.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). ***SEE ADDITIONAL COMMENTS***

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

# Uniform Residential Appraisal Report

File # 10495EM14

There are 13 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 163,900 to $ 207,900

There are 77 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 103,000 to $ 259,900

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 7811 GREENE FARM DR YPSILANTI, MI 48197 | 7259 RICHMOND DR YPSILANTI, MI 48197 | | 7691 ROXBURY DR YPSILANTI, MI 48197 | | 7785 DOVER DR YPSILANTI, MI 48197 | |
| Proximity to Subject | | 0.49 MILES W | | 0.13 MILES SW | | 0.19 MILES NW | |
| Sale Price | $ 0 | | $ 165,000 | | $ 172,900 | | $ 153,100 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 92.23 sq.ft. | | $ 102.61 sq.ft. | | $ 77.64 sq.ft. | |
| Data Source(s) | | FLINT#213065399;DOM 33 | | FLINT#213064111;DOM 74 | | FLINT#213066819;DOM 24 | |
| Verification Source(s) | | PARCEL #K01133005400 | | PARCEL #K01133311333 | | PARCEL #K01133401003 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | CONV. NO COSTS | | CONV. NO COSTS | | CASH NO COSTS | |
| Date of Sale/Time | | 9/16/2013 | | 10/4/2013 | | 9/26/2013 | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 7,800 SQ.FT. | 7,400 SQ.FT. | | 8,580 SQ.FT. | | 7,405 SQ.FT. | |
| View | RESIDENTIAL | AVERAGE | | RESIDENTIAL | | RESIDENTIAL | |
| Design (Style) | COLONIAL | COLONIAL | | COLONIAL | | COLONIAL | |
| Quality of Construction | STD/BK-VINYL | STD/BK-VINYL | | STD/BK-VINYL | | STD/BK-VINYL | |
| Actual Age | 13 | 12 | | 12 | | 14 | |
| Condition | AVG/REPAIRS | GOOD | -10,000 | GOOD | -10,000 | AVG/REPAIRS | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6 3 2.1 | 6 4 2.1 | | 6 3 2.1 | | 6 3 2.1 | |
| Gross Living Area | 1,740 sq.ft. | 1,789 sq.ft. | 0 | 1,685 sq.ft. | +1,375 | 1,972 sq.ft. | -5,800 |
| Basement & Finished Rooms Below Grade | 705 SQ.FT. PRTL. FINISH | BASEMENT UNFINISHED | +2,000 | BASEMENT UNFINISHED | +2,000 | BASEMENT UNFINISHED | +2,000 |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | GFWA/CA | GFWA/CA | | GFWA/CA | | GFWA/CA | |
| Energy Efficient Items | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Garage/Carport | 2-CAR GAR. | 2-CAR GAR. | | 2-CAR GAR. | | 2-CAR GAR. | |
| Porch/Patio/Deck | PORCH | PORCH | | PCH/PTO/DCK | -5,000 | PORCH | |
| FIREPLACE(S), ETC. | 1-FIREPLACE | 1-FIREPLACE | | 1-FIREPLACE | | 1-FIREPLACE | |
| FENCE, POOL, ETC. | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| OTHER AMENITIES & EXTRAS | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Net Adjustment (Total) | | ☐ + ☒ - | -8,000 | ☐ + ☒ - | $ -11,625 | ☐ + ☒ - | $ -3,800 |
| Adjusted Sale Price of Comparables | | Net Adj. 4.8 % Gross Adj. 7.3 % | $ 157,000 | Net Adj. 6.7 % Gross Adj. 10.6 % | $ 161,275 | Net Adj. 2.5 % Gross Adj. 5.1 % | $ 149,300 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

PRIOR SALES AND TRANSFER HISTORY WAS REVIEWED (IF AVAILABLE) AND NOTED IN THE REPORT IF APPLICABLE. DATA WAS OBTAINED FROM LOCAL MLS RECORDS, CITY AND/OR COUNTY RECORDS OR THE CURRENT OWNER/OCCUPANTS OF THE PROPERTIES.

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   LOCAL MLS RECORDS, CITY AND/OR COUNTY RECORDS OR CURRENT OWNER/OCCUPANTS OF THE PROPERTY.

My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   LOCAL MLS RECORDS, CITY AND/OR COUNTY RECORDS OR CURRENT OWNER/OCCUPANTS OF THE PROPERTY.

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | REALIST/MUNICIPALITY | REALIST/MUNICIPALITY | REALIST/MUNICIPALITY | REALIST/MUNICIPALITY |
| Effective Date of Data Source(s) | 06/10/2014 | 06/10/2014 | 06/10/2014 | 06/10/2014 |

Analysis of prior sale or transfer history of the subject property and comparable sales   PER CITY AND/OR TOWNSHIP RECORDS AND, DATA RESEARCH TYPICALLY OBTAINED FROM LOCAL MLS SYSTEM RECORDS, THE SUBJECT PROPERTY HAS NOT TRANSFERRED TITLE IN THE PAST 36 MONTHS. THE COMPARABLES HAVE ALSO NOT TRANSFERRED TITLE WITHIN 12 MONTHS PRIOR TO THE SALES DATES NOTED ABOVE.

Summary of Sales Comparison Approach   ADJUSTED VALUE RANGE VARIES BETWEEN $131,725 AND $161,275. CRITERIA FOR RESEARCH INCLUDED SALES WITHIN A 1-MILE RADIUS, 2-LEVEL DESIGN, BUILT FROM 1990 TO PRESENT, BETWEEN 1,400 & 2,200 SQUARE FEET AND SOLD WITHIN 12 MONTHS. ALL SALES REVEALED WERE WEIGHED AND CONSIDERED. THIS ANALYSIS EXPOSED 3 PROPERTIES THAT BEST REPRESENT THE SUBJECT AND WERE UTILIZED. SALE #3 GIVEN MOST WEIGHT DUE TO ITS LOW NET ADJUSTMENT AMOUNT AND SIMILARITY IN CONDITION. SALES OVER TYPICAL 6-MONTH GUIDELINE AND NON-CONVENTIONAL SALES HAD TO BE USED DUE TO THE LACK OF CURRENT CONVENTIONAL SALES SIMILAR TO THE SUBJECT IN THE GENERAL AREA.

Indicated Value by Sales Comparison Approach $ 150,000

Indicated Value by: Sales Comparison Approach $ 150,000   Cost Approach (if developed) $ 157,499   Income Approach (if developed) $

THE MARKET AND COST APPROACH WERE EMPLOYED IN THIS REPORT. THE MARKET APPROACH IS GIVEN GREATER CONSIDERATION BECAUSE IT REFLECTS THE ACTIONS OF THE TYPICAL BUYER & SELLER. THE INCOME APPROACH WAS CONSIDERED BUT NOT UTILIZED DUE TO A LIMITED RENTAL DATA MARKET.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 150,000 , as of 06/10/2014 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005    Page 2 of 6    Fannie Mae Form 1004 March 2005

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    SITE VALUE DETERMINED BY THE BEST
CURRENT SALES AVAILABLE AND MARKET TRENDS IN THIS AREA.

| | | | | | |
|---|---|---|---|---|---|
| ESTIMATED ☒ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 20,000 |
| Source of cost data  MARSHALL & SWIFT INCLUDING LOCAL BUILDERS | DWELLING | 1,740 | Sq.Ft. @ $ 75.00 | =$ | 130,500 |
| Quality rating from cost service  AVG.  Effective date of cost data  CURRENT | BASEMENT | 705 | Sq.Ft. @ $ 25.00 | =$ | 17,625 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | PORCH/FIREPLACE | | | =$ | 4,500 |
| THE MARSHALL/SWIFT COST SERVICE ADJUSTED TO LOCAL | Garage/Carport | 476 | Sq.Ft. @ $ 18.00 | =$ | 8,568 |
| BUILDERS COST WAS APPLIED AND CORRELATED FOR THE | Total Estimate of Cost-New  ROUNDED | | | =$ | 161,193 |
| ESTIMATION OF THE COST APPROACH. SQUARE FOOTAGE | Less | Physical | Functional | External | |
| CALCULATIONS AND A BUILDING SKETCH ARE ATTACHED TO THE | Depreciation | 26,194 | | | =$( 26,194 ) |
| ENCLOSED ADDENDUMS. | Depreciated Cost of Improvements | | | =$ | 134,999 |
| | "As-Is" Value of Site Improvements | | | =$ | 2,500 |
| | ROUNDED | | | | |
| Estimated Remaining Economic Life (HUD and VA only)  67  Years | INDICATED VALUE BY COST APPROACH | | | =$ | 157,499 |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

Estimated Monthly Market Rent $ ***************** X Gross Rent Multiplier ****************** = $ _____ Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM)    THE INCOME APPROACH WAS NOT UTILIZED DUE TO THE LACK OF
SUFFICIENT AVAILABLE DATA TO DEVELOP AND SUPPORT MARKET RENT AND GRM AT THE TIME OF THIS REPORT.

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No  Unit type(s) ☐ Detached ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project
Total number of phases ____ Total number of units ____ Total number of units sold ____
Total number of units rented ____ Total number of units for sale ____ Data source(s)
Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion.
Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source
Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

14-04665-wsd　Doc 1　Filed 07/03/14　Entered 07/03/14 15:44:20　Page 23 of 37

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

14-04665-wsd    Doc 1    Filed 07/03/14    Entered 07/03/14 15:44:20    Page 24 of 37

# Uniform Residential Appraisal Report

File # 10495EM14

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Eric M Morse_ | Signature _____ |
| Name ERIC DEAN MORSE, RAA | Name _____ |
| Company Name ALLIED REAL ESTATE APPRAISERS, INC. | Company Name _____ |
| Company Address 4018 MILLER ROAD, FLINT, MI 48507 | Company Address _____ |
| Telephone Number (810) 691-2240 | Telephone Number _____ |
| Email Address ERIC@ALLIEDAPPRAISERS.COM | Email Address _____ |
| Date of Signature and Report 06/11/2014 | Date of Signature _____ |
| Effective Date of Appraisal 06/10/2014 | State Certification # _____ |
| State Certification # _____ | or State License # _____ |
| or State License # 1201000920 | State _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State MI | |
| Expiration Date of Certification or License 07/31/2015 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED
7811 GREENE FARM DR
YPSILANTI, MI 48197
APPRAISED VALUE OF SUBJECT PROPERTY $ 150,000
LENDER/CLIENT
Name _____
Company Name SEAN SUTTON
Company Address 7811 GREENE FARM DR., YPSILANTI, MI 48197
Email Address _____

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
  Date of Inspection _____
☐ Did inspect interior and exterior of subject property
  Date of Inspection _____

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
  Date of Inspection _____

Freddie Mac Form 70 March 2005     Page 6 of 6     Fannie Mae Form 1004 March 2005

14-04665-wsd   Doc 1   Filed 07/03/14   Entered 07/03/14 15:44:20   Page 25 of 37

# Uniform Residential Appraisal Report

File # 10495EM14

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 7811 GREENE FARM DR | 7684 PIONEER DR | | 7590 KENTON CT | | 7816 TROTTERS PARK ST | |
| | YPSILANTI, MI 48197 | YPSILANTI, MI 48197 | | YPSILANTI, MI 48197 | | YPSILANTI, MI 48197 | |
| Proximity to Subject | | 0.05 MILES NW | | 0.34 MILES W | | 0.37 MILES N | |
| Sale Price | $ 0 | | $ 177,000 | | $ 160,000 | | $ 155,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 82.10 sq.ft. | | $ 110.57 sq.ft. | | $ 72.06 sq.ft. | |
| Data Source(s) | | FLINT#213093452;DOM 268 | | FLINT#543216669;DOM 26 | | FLINT#213205724;DOM 30 | |
| Verification Source(s) | | PARCEL #K01133406062 | | PARCEL #K1133310275 | | PARCEL #K01133110027 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | CASH | | FHA | | CASH | |
| Concessions | | NO COSTS | | SELLER COST | -5,000 | NO COSTS | |
| Date of Sale/Time | | 4/29/2014 | | 11/27/2013 | | 2/6/2014 | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 7,800 SQ.FT. | 8,000 SQ.FT. | | 8,000 SQ.FT. | | 6,534 SQ.FT. | |
| View | RESIDENTIAL | RESIDENTIAL | | AVERAGE | | AVERAGE | |
| Design (Style) | COLONIAL | COLONIAL | | COLONIAL | | COLONIAL | |
| Quality of Construction | STD/BK-VINYL | STD/BK-VINYL | | STD/BK-VINYL | | STD/BK-VINYL | |
| Actual Age | 13 | 13 | | 13 | | 12 | |
| Condition | AVG/REPAIRS | GOOD | -10,000 | GOOD | -10,000 | GOOD | -10,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6  3  2.1 | 6  3  2.1 | | 6  3  2.1 | | 6  3  2.1 | |
| Gross Living Area | 1,740 sq.ft. | 2,156 sq.ft. | -10,400 | 1,447 sq.ft. | +7,325 | 2,151 sq.ft. | -10,275 |
| Basement & Finished | 705 SQ.FT. | BASEMENT | | 0SF | | 0SF | |
| Rooms Below Grade | PRTL. FINISH | UNFINISHED | +2,000 | | | | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | GFWA/CA | GFWA/CA | | GFWA/CA | | GFWA/CA | |
| Energy Efficient Items | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Garage/Carport | 2-CAR GAR. | 2-CAR GAR. | | 2-CAR GAR. | | 2-CAR GAR. | |
| Porch/Patio/Deck | PORCH | PORCH/PATIO | -2,000 | PORCH | | PORCH/DECK | -3,000 |
| FIREPLACE(S), ETC. | 1-FIREPLACE | 1-FIREPLACE | | 1-FIREPLACE | | 1-FIREPLACE | |
| FENCE, POOL, ETC. | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| OTHER AMENITIES & EXTRAS | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -20,400 | ☐ + ☒ - | $ -7,675 | ☐ + ☒ - | $ -23,275 |
| Adjusted Sale Price | | Net Adj. 11.5 % | | Net Adj. 4.8 % | | Net Adj. 15.0 % | |
| of Comparables | | Gross Adj. 13.8 % | $ 156,600 | Gross Adj. 14.0 % | $ 152,325 | Gross Adj. 15.0 % | $ 131,725 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | REALIST/MUNICIPALITY | REALIST/MUNICIPALITY | REALIST/MUNICIPALITY | REALIST/MUNICIPALITY |
| Effective Date of Data Source(s) | 06/10/2014 | 06/10/2014 | 06/10/2014 | 06/10/2014 |

Analysis of prior sale or transfer history of the subject property and comparable sales  PER CITY AND/OR TOWNSHIP RECORDS, AND, DATA RESEARCH
TYPICALLY OBTAINED FROM LOCAL MLS SYSTEM RECORDS, THE SUBJECT PROPERTY HAS NOT TRANSFERRED TITLE IN THE PAST
36 MONTHS. THE COMPARABLES HAVE ALSO NOT TRANSFERRED TITLE WITHIN 12 MONTHS PRIOR TO THE SALES DATES NOTED
ABOVE.

Analysis/Comments   SALE #4, #5 AND #6 WERE UTILIZED TO HELP SUPPORT THE FINAL VALUE.

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

Form 1004 (AC)    "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Market Conditions Addendum to the Appraisal Report

File No. 10495EM14

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 7811 GREENE FARM DR | City YPSILANTI | | State MI | ZIP Code 48197 |
|---|---|---|---|---|---|
| Borrower | N/A | | | | |

Instructions: The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 47 | 14 | 16 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 7.83 | 4.67 | 5.33 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Total # of Comparable Active Listings | 7 | 8 | 13 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 0.89 | 1.71 | 2.44 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | $165,000 | $156,960 | $174,200 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 40 | 31.5 | 18.5 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Comparable List Price | $177,200 | $193,950 | $184,900 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 181 | 159.5 | 74 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 98.19 | 99.71 | 99.30 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☒ Yes | ☐ No | | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).  THE FLINT RAPATTONI MLS SYSTEM INDICATES THERE WERE 77 CLOSED SALES DURING THE PAST 12 MONTHS AND 20 OF THOSE SALES CONTAINED SELLER CONCESSIONS WHICH IS 26% OF THE TOTAL TRANSACTIONS IN THIS MARKET AREA. PRIOR MONTHS 7-12: 47 SALES; 20 WITH CONCESSIONS; 43% OF SALES FOR THIS PERIOD. 4-6: 14 SALES; 0 WITH CONCESSIONS; 0% OF SALES FOR THIS PERIOD. 0-3: 16 SALES; 0 WITH CONCESSIONS; 0% OF SALES FOR THIS PERIOD. THE CONCESSIONS RANGED BETWEEN 1 AND 5,100. THE MEDIAN CONCESSION AMOUNT IS $2,965.

Are foreclosure sales (REO sales) a factor in the market?  ☒ Yes  ☐ No  If yes, explain (including the trends in listings and sales of foreclosed properties).
THE FLINT RAPATTONI MLS SYSTEM INDICATES THERE WERE 77 CLOSED SALES DURING THE PAST 12 MONTHS AND 11 OF THOSE SALES WERE EITHER FORECLOSURES OR SHORT SALES WHICH IS 14% OF THE TOTAL TRANSACTIONS IN THIS MARKET AREA. PRIOR MONTHS 7-12: 47 SALES; 2 FORECLOSURES OR SHORT SALES; 4% OF SALES FOR THIS PERIOD. 4-6: 14 SALES; 4 FORECLOSURES OR SHORT SALES; 29% OF SALES FOR THIS PERIOD. 0-3: 16 SALES; 5 FORECLOSURES OR SHORT SALES; 31% OF SALES FOR THIS PERIOD.

Cite data sources for above information.  THE FLINT RAPATTONI MLS SYSTEM WAS THE DATA SOURCE USED TO COMPLETE THE MARKET CONDITIONS ADDENDUM.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
EFFECTIVE DATE: TUESDAY, JUNE 10, 2014

If the subject is a unit in a condominium or cooperative project, complete the following:  Project Name:

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?  ☐ Yes  ☐ No  If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| Signature | | Signature | |
|---|---|---|---|
| Appraiser Name | ERIC DEAN MORSE, RAA | Supervisory Appraiser Name | |
| Company Name | ALLIED REAL ESTATE APPRAISERS, INC. | Company Name | |
| Company Address | 4018 MILLER ROAD, FLINT, MI 48507 | Company Address | |
| State License/Certification # | 1201000920  State  MI | State License/Certification # | State |
| Email Address | ERIC@ALLIEDAPPRAISERS.COM | Email Address | |

Freddie Mac Form 71  March 2009                 Page 1 of 1                 Fannie Mae Form 1004MC  March 2009

Form 1004MC2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

14-04665-wsd   Doc 1   Filed 07/03/14   Entered 07/03/14 15:44:20   Page 27 of 37

# SUBJECT PHOTO PAGE

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 7811 GREENE FARM DR | | | | | |
| City | YPSILANTI | County | WASHTENAW | State | MI | Zip Code 48197 |
| Lender | SEAN SUTTON | | | | | |



**SUBJECT FRONT**

7811 GREENE FARM DR
SALES PRICE          0
GROSS LIVING AREA 1,740
TOTAL ROOMS          6
TOTAL BEDROOMS   3
TOTAL BATHROOMS 2.1
LOCATION              AVERAGE
VIEW                      RESIDENTIAL
SITE                       7,800 SQ.FT.
QUALITY               STD/BK-VINYL
AGE                       13



**SUBJECT REAR**



**SUBJECT STREET**

Form PIC3x5.SR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# ALTERNATE SUBJECT PHOTO PAGE

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 7811 GREENE FARM DR | | | | | | |
| City | YPSILANTI | County | WASHTENAW | State | MI | Zip Code | 48197 |
| Lender | SEAN SUTTON | | | | | | |



### SUBJECT LEFT SIDE

7811 GREENE FARM DR
SALES PRICE          0
GROSS LIVING AREA 1,740
TOTAL ROOMS        6
TOTAL BEDROOMS 3
TOTAL BATHROOMS 2.1
LOCATION            AVERAGE
VIEW                RESIDENTIAL
SITE                7,800 SQ.FT.
QUALITY             STD/BK-VINYL
AGE                 13



### SUBJECT RIGHT SIDE



### ADDITIONAL STREET SCENE

Form PIC3x5.SR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# PHOTOGRAPH ADDENDUM

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 7811 GREENE FARM DR | | | | | |
| City | YPSILANTI | County | WASHTENAW | State | MI | Zip Code 48197 |
| Lender | SEAN SUTTON | | | | | |



**FOYER ENTRY**



**LIVING ROOM**



**FAMILY ROOM**



**DINING AREA**



**KITCHEN**



**LAUNDRY ROOM**



**2ND LEVEL BEDROOM**



**2ND LEVEL BEDROOM**



**2ND LEVEL BEDROOM**



**1ST LEVEL HALF BATHROOM**



**2ND LEVEL FULL BATHROOM**



**2ND LEVEL FULL BATHROOM**



**BSMT. RECREATIONAL ROOM**



**BASEMENT UTILITY AREA**



**BASEMENT MOISTURE**

Form PIC15 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# COMPARABLE PHOTO PAGE

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 7811 GREENE FARM DR |

| City | YPSILANTI | County | WASHTENAW | State | MI | Zip Code | 48197 |
|---|---|---|---|---|---|---|---|

| Lender | SEAN SUTTON |
|---|---|



### COMPARABLE 1
7259 RICHMOND DR
PROX. TO SUBJECT 0.49 MILES W
SALE PRICE          165,000
GROSS LIVING AREA 1,789
TOTAL ROOMS        6
TOTAL BEDROOMS    4
TOTAL BATHROOMS 2.1
LOCATION           AVERAGE
VIEW               AVERAGE
SITE               7,400 SQ.FT.
QUALITY            STD/BK-VINYL
AGE                12



### COMPARABLE 2
7691 ROXBURY DR
PROX. TO SUBJECT 0.13 MILES SW
SALE PRICE          172,900
GROSS LIVING AREA 1,685
TOTAL ROOMS        6
TOTAL BEDROOMS    3
TOTAL BATHROOMS 2.1
LOCATION           AVERAGE
VIEW               RESIDENTIAL
SITE               8,580 SQ.FT.
QUALITY            STD/BK-VINYL
AGE                12



### COMPARABLE 3
7785 DOVER DR
PROX. TO SUBJECT 0.19 MILES NW
SALE PRICE          153,100
GROSS LIVING AREA 1,972
TOTAL ROOMS        6
TOTAL BEDROOMS    3
TOTAL BATHROOMS 2.1
LOCATION           AVERAGE
VIEW               RESIDENTIAL
SITE               7,405 SQ.FT.
QUALITY            STD/BK-VINYL
AGE                14

# COMPARABLE PHOTO PAGE

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 7811 GREENE FARM DR |
| City | YPSILANTI | County WASHTENAW | State MI | Zip Code 48197 |
| Lender | SEAN SUTTON |



### COMPARABLE 4
7684 PIONEER DR
PROX. TO SUBJECT 0.05 MILES NW
SALE PRICE          177,000
GROSS LIVING AREA 2,156
TOTAL ROOMS        6
TOTAL BEDROOMS     3
TOTAL BATHROOMS 2.1
LOCATION           AVERAGE
VIEW               RESIDENTIAL
SITE               8,000 SQ.FT.
QUALITY            STD/BK-VINYL
AGE                13



### COMPARABLE 5
7590 KENTON CT
PROX. TO SUBJECT 0.34 MILES W
SALE PRICE          160,000
GROSS LIVING AREA 1,447
TOTAL ROOMS        6
TOTAL BEDROOMS     3
TOTAL BATHROOMS 2.1
LOCATION           AVERAGE
VIEW               AVERAGE
SITE               8,000 SQ.FT.
QUALITY            STD/BK-VINYL
AGE                13



### COMPARABLE 6
7816 TROTTERS PARK ST
PROX. TO SUBJECT 0.37 MILES N
SALE PRICE          155,000
GROSS LIVING AREA 2,151
TOTAL ROOMS        6
TOTAL BEDROOMS     3
TOTAL BATHROOMS 2.1
LOCATION           AVERAGE
VIEW               AVERAGE
SITE               6,534 SQ.FT.
QUALITY            STD/BK-VINYL
AGE                12

# BUILDING SKETCH

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 7811 GREENE FARM DR | | | | | |
| City | YPSILANTI | County | WASHTENAW | State | MI | Zip Code 48197 |
| Lender | SEAN SUTTON | | | | | |



Sketch by Apex BluKohn6 Standard™

Comments:

| AREA CALCULATIONS SUMMARY | | | | LIVING AREA BREAKDOWN | | |
|---|---|---|---|---|---|---|
| Code | Description | Net Size | Net Totals | Breakdown | | Subtotals |
| GLA1 | First Floor | 1048.00 | 1048.00 | First Floor | | |
| GLA2 | Second Floor | 692.50 | 692.50 | 23.0 x 12.5 | | 287.50 |
| BSMT | Basement | 705.00 | 705.00 | 1.5 x 31.0 | | 46.50 |
| GAR | Garage | 476.00 | 476.00 | 10.5 x 44.0 | | 462.00 |
| P/P | Porch | 40.00 | 40.00 | 7.0 x 36.0 | | 252.00 |
| UND | Driveway | 380.00 | 380.00 | Second Floor | | |
| | | | | 15.0 x 2.0 | | 30.00 |
| | | | | 16.0 x 23.0 | | 368.00 |
| | | | | 15.5 x 19.0 | | 294.50 |

| | Net LIVABLE Area | (rounded) | 1741 | 7 Items | (rounded) | 1741 |
|---|---|---|---|---|---|---|

Form SKT.BldSkl --- "WinTOTAL" appraisal software by a la mode, inc. --- 1-800-ALAMODE

# LOCATION MAP

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 7811 GREENE FARM DR | | | | | |
| City | YPSILANTI | County WASHTENAW | | State MI | Zip Code 48197 | |
| Lender | SEAN SUTTON | | | | | |



Form MAP.LOC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# E&O INSURANCE

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 7811 GREENE FARM DR |
| City | YPSILANTI |
| Lender | SEAN SUTTON |

| | | | | | |
|---|---|---|---|---|---|
| | | County WASHTENAW | State MI | Zip Code 48197 | |

**Real Estate Appraisers Professional Liability**

Liberty
International
Underwriters.

| Date Issued | Policy Number | Previous Policy Number |
|---|---|---|
| 09/19/2013 | LIU013394-013 | LIU013394-012 |

## LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Company")
55 Water Street, 18th Floor
New York, NY 10041

THIS IS A CLAIMS MADE AND REPORTED POLICY. PLEASE READ IT CAREFULLY.

**Item**

**DECLARATIONS**

1. Customer ID: 107023
   Named Insured:
   ALLIED REAL ESTATE APPRAISERS INC.
   4078 Miller Road
   Flint, MI 48507

   This policy is exempt from the filing requirements of section 2236 of the Insurance code of 1956 PA, MCL 500.2236.

2. Policy Period:
   From: 11/08/2013     To: 11/08/2014
   12:01 A.M. Standard Time at the address stated in Item 1.

3. Deductible: $1,000     Each Claim

4. Retroactive Date:     11/08/1993

5. Inception Date:     11/08/2001

6. Limits of Liability:
   A. $1,000,000     Each Claim
   B. $1,000,000     Aggregate

   The Limit of Liability for Each Claim and in the Aggregate is reduced by Damages and Claims Expenses as defined in the Policy.

7. Mail all notices, including notice of claim, to Agent:

   LIA Administrators & Insurance Services
   1600 Anacapa Street
   Santa Barbara, California 93101
   (800) 334-0652;   Fax: (805) 962-0652

8. Annual Premium:     $2,285.00

9. Number of Appraisers:     4

10. Forms attached at issue:   LIA002 (10/11)  LIA012 (08/11)  LIA015 (03/10)  LIA020 (03/10)
    OFAC (08/09)

This Declarations Page together with the completed and signed Policy Application including all attachments and exhibits thereto, and the Real Estate Appraisers Professional Liability Insurance Policy shall constitute the contract between the Named Insured and the Company.

By _____

Authorized Signature

LIA001 (04/10)

Form MAP-PLAT — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# APPRAISAL LICENSE

| Borrower/Client | N/A | | | |
|---|---|---|---|---|
| Property Address | 7811 GREENE FARM DR | | | |
| City | YPSILANTI | County WASHTENAW | State MI | Zip Code 48197 |
| Lender | SEAN SUTTON | | | |

RICK SNYDER
GOVERNOR

STATE OF MICHIGAN

A1578434

## DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS

CORPORATIONS, SECURITIES & COMMERCIAL LICENSING BUREAU
STATE LICENSED APPRAISER
LICENSE

ERIC DEAN MORSE
4018 MILLER RD
FLINT MI 48507

| PERMANENT ID NO | EXPIRATION DATE | AGENT NO | THIS DOCUMENT IS NOT ISSUED UNDER THE LAWS OF THE STATE OF MICHIGAN |
|---|---|---|---|
| 1201000920 | 07/31/2015 | 2694295 | |

Form MAP.PLAT — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## APPRAISAL AND REPORT IDENTIFICATION

**This Report is one of the following types:**

☒ Appraisal Report    (A written report prepared under Standards Rule   2-2(A) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ Restricted    (A written report prepared under Standards Rule   2-2(B) , pursuant to the Scope of Work, as disclosed elsewhere in this report,
Appraisal Report   restricted to the stated intended use by the specified client or intended user.)

## COMMENTS ON STANDARDS RULE 2-3

I CERTIFY THAT, TO THE BEST OF MY KNOWLEDGE AND BELIEF:
— THE STATEMENTS OF FACT CONTAINED IN THIS REPORT ARE TRUE AND CORRECT.
— THE REPORTED ANALYSES, OPINIONS, AND CONCLUSIONS ARE LIMITED ONLY BY THE REPORTED ASSUMPTIONS AND LIMITING CONDITIONS AND ARE MY PERSONAL, IMPARTIAL, AND UNBIASED PROFESSIONAL ANALYSES, OPINIONS, AND CONCLUSIONS.
— UNLESS OTHERWISE INDICATED, I HAVE NO PRESENT OR PROSPECTIVE INTEREST IN THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT AND NO PERSONAL INTEREST WITH RESPECT TO THE PARTIES INVOLVED.
— UNLESS OTHERWISE INDICATED, I HAVE PERFORMED NO SERVICES, AS AN APPRAISER OR IN ANY OTHER CAPACITY, REGARDING THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT WITHIN THE THREE-YEAR PERIOD IMMEDIATELY PRECEDING ACCEPTANCE OF THIS ASSIGNMENT.
— I HAVE NO BIAS WITH RESPECT TO THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT OR THE PARTIES INVOLVED WITH THIS ASSIGNMENT.
— MY ENGAGEMENT IN THIS ASSIGNMENT WAS NOT CONTINGENT UPON DEVELOPING OR REPORTING PREDETERMINED RESULTS.
— MY COMPENSATION FOR COMPLETING THIS ASSIGNMENT IS NOT CONTINGENT UPON THE DEVELOPMENT OR REPORTING OF A PREDETERMINED VALUE OR DIRECTION IN VALUE THAT FAVORS THE CAUSE OF THE CLIENT, THE AMOUNT OF THE VALUE OPINION, THE ATTAINMENT OF A STIPULATED RESULT, OR THE OCCURRENCE OF A SUBSEQUENT EVENT DIRECTLY RELATED TO THE INTENDED USE OF THIS APPRAISAL.
— MY ANALYSES, OPINIONS, AND CONCLUSIONS WERE DEVELOPED, AND THIS REPORT HAS BEEN PREPARED, IN CONFORMITY WITH THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE THAT WERE IN EFFECT AT THE TIME THIS REPORT WAS PREPARED.
— UNLESS OTHERWISE INDICATED, I HAVE MADE A PERSONAL INSPECTION OF THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT.
— UNLESS OTHERWISE INDICATED, NO ONE PROVIDED SIGNIFICANT REAL PROPERTY APPRAISAL ASSISTANCE TO THE PERSON(S) SIGNING THIS CERTIFICATION (IF THERE ARE EXCEPTIONS, THE NAME OF EACH INDIVIDUAL PROVIDING SIGNIFICANT REAL PROPERTY APPRAISAL ASSISTANCE IS STATED ELSEWHERE IN THIS REPORT).

## COMMENTS ON APPRAISAL AND REPORT IDENTIFICATION

NOTE ANY USPAP RELATED ISSUES REQUIRING DISCLOSURE AND ANY STATE MANDATED REQUIREMENTS:

IN MICHIGAN, APPRAISERS ARE REQUIRED TO BE LICENSED AND ARE NOW REGULATED BY THE CORPORATIONS, SECURITIES AND COMMERCIAL LICENSING BUREAU, P.O. BOX 30018, LANSING, MICHIGAN 48909.
THE APPRAISER HAS ANALYZED/APPRAISED THE SUBJECT'S PROPERTY TYPE BEFORE AND POSSESSES THE NECESSARY KNOWLEDGE AND EXPERIENCE TO COMPLETE THIS REPORT IN CONFORMITY WITH THE COMPETENCY PROVISION OF USPAP. THE APPRAISER HAS BEEN INVOLVED WITH REAL ESTATE APPRAISING FULL TIME FOR OVER 28 YEARS IN THIS MARKET AREA AND RESIDED IN MICHIGAN HIS ENTIRE LIFE. HE HAS A FULL UNDERSTANDING OF THE ECONOMICS, EMPLOYMENT STATISTICS, HISTORICAL TRENDS, FORECASTING, ABSORPTION RATES AND OTHER INFLUENCES THAT AFFECT THIS MARKET. HE IS INVOLVED WITH APPRAISAL SOFTWARE DEVELOPMENT AND IS A TASKFORCE MEMBER OF THE LOCAL RAPATTONI-MLS BOARD OF REALTORS. HE HAS BEEN LICENSED SINCE THE INCEPTION OF MANDATED APPRAISER LICENSING IN 1991 AND HAS BEEN LICENSED AS A REALTOR SINCE 1986.
EXPOSURE TIME IS EQUAL TO THE MARKETING TIME NOTED IN THE NEIGHBORHOOD SECTION OF THE REPORT.
ANY PRIVATE UTILITIES (IF APPLICABLE) INCLUDING PROPANE/WELL/SEPTIC, THAT ARE SUPPLIED TO THE SUBJECT SITE ARE TYPICAL FOR THE AREA, DO NOT HAVE A NEGATIVE INFLUENCE ON MARKETABILITY OR FINAL VALUE, AND PUBLIC HOOK-UP WAS NOT FEASIBLE AT THE TIME OF THIS REPORT. ALL UTILITIES (INCLUDING ELECTRICAL) WERE ON AND FUNCTIONAL AT THE TIME OF INSPECTION, UNLESS OTHERWISE NOTED WITHIN THIS REPORT.
FINAL VALUE COULD BE OVER/UNDER PREDOMINANT. HOWEVER, SUBJECT IS NOT OVER/UNDER IMPROVED AND IS STILL WITHIN A MARKETABLE RANGE.
COMPARABLE PROPERTIES WERE VIEWED FROM THE STREET, BY THE APPRAISER, DURING TIMEFRAME AROUND WHICH THIS REPORT WAS COMPLETED.
COMPARABLE PHOTOS REFLECT THE SEASONAL STATE OF MICHIGAN AND COULD REFLECT ANY SEASON AT ANY TIME.
ALL PHYSICAL MEASUREMENTS WERE TAKEN BY THE APPRAISER WITH A LEICA DISTO-D8 MEASURING DEVICE AND ROUNDED TO 0.5' +/- INCREMENTS (IF DEEMED NECESSARY)

**APPRAISER:**

Signature: _Eric M Morse_
Name: ERIC DEAN MORSE, RAA
     ERIC@ALLIEDAPPRAISERS.COM
State Certification #: _____
or State License #: 1201000920
State: MI   Expiration Date of Certification or License: 07/31/2015
Date of Signature and Report: 06/11/2014
Effective Date of Appraisal: 06/10/2014
Inspection of Subject: ☐ None ☒ Interior and Exterior ☐ Exterior-Only
Date of Inspection (if applicable): 06/10/2014

**SUPERVISORY or CO-APPRAISER (if applicable):**

Signature: _____
Name: _____
State Certification #: _____
or State License #: _____
State: _____ Expiration Date of Certification or License: _____
Date of Signature: _____
Inspection of Subject: ☐ None ☐ Interior and Exterior ☐ Exterior-Only
Date of Inspection (if applicable): _____

Form ID14 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE